# Kopochik *v.* Pennsylvania Coal Company, Appellant.

*Negligence—Contributory negligence—Private railroad track— Stop, look and listen—Licensee—Person seeking employment.*

In the trial of an action to recover damages for injuries sustained by plaintiff in consequence of his being struck by a car operated upon defendant's private railroad, it appeared that the railroad was maintained by defendant, a coal company, in an enclosure surrounded by a high fence. Entrance to the ground was obtained through gates, and in order to reach the office it was necessary for visitors to cross the railroad by a regular crossing twelve or fourteen feet wide, which was used by about seven hundred employees daily. Plaintiff went to the defendant's office seeking work, and under the instructions of the foreman examined certain places in the mine at which he might work, and was returning to his home over the crossing at the time he was injured. The testimony was in conflict as to whether he stopped, looked and listened before attempting the crossing. There was evidence that the car which struck him was suddenly set in motion without warning, when he was on the crossing. The lower court submitted the case to the jury and refused defendant's motion for judgment n. o. v. *Held,* no error.

Argued April 13, 1914. Appeal, No. 282, Jan. T., 1914, by defendant, from judgment of C. P. Luzerne Co., Dec. T., 1908, No. 570, on verdict for plaintiff in case of Michael Kopochik v. The Pennsylvania Coal Company. Before BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The facts appear in the following opinion of STRAUSS, J., refusing motion for judgment n. o. v.:

This is an application for a judgment non obstante veredicto, but not for a new trial. The case has been twice tried, and both times it has resulted in a verdict for the plaintiff. After the first trial this court, upon facts substantially the same as appeared at the trial now under consideration, refused to enter judgment non obstante veredicto, but allowed the motion for new trial because the evidence of contributory negligence was so strong that the verdict seemed to be against the plain weight of the evidence. That evidence is again substantially as strong as before. The case in our opinion must always go to the jury so far as this question is concerned. The defendant now presses the motion for judgment non obstante only, and we shall give that somewhat more attention than was given to it at the first trial.

The facts are rather simple as we view them in the light of the verdict. The defendant operates a colliery known as No. 14, where it employs from twelve hundred to fifteen hundred men. A high fence has been built around the works and entrance to the ground is obtained through gates. Within the grounds a railroad has been established leading from a breaker and washery to weighscales. Cars filled with coal at the breaker or washery were habitually run by gravity to the scales. Generally these cars were in charge of a brakeman who regulated their running through control furnished by a brake. About seven hundred employees went daily to and from their work over a road established within the grounds leading from one of the gates across the railroad. Over the railroad a regular crossing from twelve to fourteen feet wide had been established in the line of this road for the use of wagons and of employees. This crossing was so close to the washery that a car, standing under the washery to be loaded, would reach, and some-

times encroach upon, the crossing. It seems to have been usual for persons seeking employment to use this road and crossing in going to the place where the foreman having charge of employment of men might be found.

The plaintiff who for many years worked at this colliery, but who was out of employment on April 3, 1908, went in search of employment over this road and crossing to the foreman who sent him into the mine to see several places at which he might work. On returning, plaintiff, with eight or ten other men, went from the shaft over this crossing with a view of returning to his home.

There is some conflict in the evidence as to whether the plaintiff stopped, looked and listened, and walked over the crossing, or whether without these precautions, ran across the railroad track some distance below the crossing with a view of catching a car that was passing on a public road outside of the fence. That question of fact was duly submitted to the jury. The plaintiff claimed and testified that usually when cars stood under the washery, and projected out towards, or over the crossing, there was a man on the car at the end nearest the crossing who warned persons about to use the crossing when it was proposed to start the car, but at this particular time there was no man at that place, and no warning given, and that the car was suddenly set in motion when the plaintiff was on the crossing, whereby he was struck, knocked down, dragged about twenty feet, and had one foot so injured that it had to be amputated and the other less injured but sufficiently to cause the amputation of one or more toes to be necessary.

The defense was two-fold. First, on the fact that the plaintiff was guilty of contributory negligence in attempting to cross the track without the precautions required by law at a place, not the crossing, in front of a moving car; and, secondly, that the defendant owed the plaintiff no duty whatever because there was no relation

of master and servant, claiming the plaintiff to be only a licensee of the premises who was seeking work, but had not yet entered into the employment of the defendant. It is in consequence of this latter theory that the motion for judgment non obstante veredicto is now presented, and the defendant relies upon the principal followed in Larmore v. The Crownpoint Iron Company, 4 N. E. Rep. 752; 101 N. Y. 391; and Schiffer v. Sauer Co., 238 Pa., 550. In the former case, the plaintiff seeking employment, went upon the grounds of the defendant and while walking along a pathway was struck by a piece from a machine that had suddenly broken. In the opinion the court stated:

"The plaintiff was on the premises at most by mere implied sufferance or license of the defendant, and not on its invitation, express or implied; nor was he there in any proper sense on the business of the company. ........He went there on his own business, and in returning he was subserving his own purpose only. The precise question is, whether a person who goes upon the land of another without invitation to secure employment from the owner of the land is entitled to indemnity from such owner for an injury happening from the operation of a defective machine on the premises, not obviously dangerous, which he passes in the course of his journey, if he can show that the owner might have ascertained the defect by the exercise of reasonable care."

The court answers the question by saying:

"We know of no case which goes to this extent. There is no negligence in a legal sense which can give a right of action unless there is a violation of a legal duty to exercise care. The duty may exist as to some persons, and not as to others, depending upon peculiar relations and circumstances. An employer is required to take reasonable precautions and to exercise reasonable care in providing safe machinery and appliances for the use of his servant. The duty arises out of the relation. The

owner of land in general may use it as he pleases and leave it in such condition as he pleases.........So also where the owner of land in the prosecution of his own purpose or business, or of a purpose or business in which there is a common interest, invites another, either expressly or impliedly, to come upon his premises, he cannot with impunity expose him to unreasonable or concealed dangers; as, for instance, from an open trap in a passageway.   The duty in this case is founded upon the plainest principles of justice......The duty of keeping premises in a safe condition, even as against a mere licensee, may also arise where affirmative negligence in the management of the property or business of the owner would be likely to subject persons exercising the privilege, theretofore permitted and enjoyed, to great danger.   The case of running a locomotive without warning over a path across the railroad, which had been generally used by the public without objection, furnishes an example.   Barry v. N. Y. Central Railroad, 92 N. Y. 289:.......In the case before us there were no circumstances creating a duty on the part of defendant to the plaintiff to keep the machine in repair; and consequently no obligation to remunerate the latter for his injury.   The machine was not intrinsically dangerous. The plaintiff was a mere licensee.   The negligence, if any, was passive and not active, of omission and not of commission.   A judgment in favor of the plaintiff in the court below was therefore reversed, though not without dissent."

In Schiffer v. Sauer Co., 238 Pa. 550, the plaintiff who was a carpenter seeking employment, entered into a building in the course of erection while the defendants, one a contractor doing plumbing work, and the other a gas company, were jointly engaged in testing and inspecting the gas pipes, and was injured by an explosion resulting from the omission to plug or cap two openings in the gas-main.   Judgment was entered by the court in favor of the defendant, because the plaintiff was a

mere licensee to whom the defendant owed no duty, except to abstain from inflicting on him an intentional, wanton or wilful injury, and the court quoted at length from the foregoing opinion.

It would seem as if there were a plain distinction to be found between the facts of those cases and the one now before us; a distinction indicated in the Larmore case when the court refers to the running of a locomotive without warning over a path across the railroad which had been generally used by the public. The path in this colliery was opened by the railroad company to accommodate the needs of its employees, as well as persons with horses and wagons who had business within the limits of the colliery grounds, and persons who in the course of defendant's business might become its employees and were therefore received by its foreman at a place within the grounds which was reached only by passing over the crossing. Surely an employer of labor who operates a railroad such as this one must operate it without negligence toward those who come upon his ground seeking employment at a place appointed by him for the purpose; who coming as much about his business as about their own, are by him directed over a railroad crossing as the only way of reaching the office or official that must be visited if employment is to be obtained. When such a railroad is operated negligently, it comes within the instance suggested in theLarmore case, supra, where the negligence is active and not passive, where it is an act of commission and not of omission; or, still speaking in the language of that case, we have an instance where "the duty of keeping the premises in safe condition even as against a mere licensee may also arise where affirmative negligence in the management of the property or business of the owner would be likely to subject persons exercising the privilege theretofore permitted or enjoyed, to great danger."

Much stress was laid at the argument on the fact that the defendant had enclosed the property with a high

fence.  But this overlooks the other potent fact that the defendant had left gates in the fence and established roads from those gates across a railroad operated within the enclosure.  Whether the special conditions existing at this place required the establishment of signals or brakemen to give notice before moving the cars, was in our opinion clearly a question of fact for the jury, and as such it was submitted both in the body of the charge and in the answer to a particular request by the defendant for instructions.  On the whole case we deny the motion.

Verdict for plaintiff for $3,300 and judgment thereon.

The defendant appealed.

*Error assigned* was, inter alia, the refusal of judgment for defendant n. o v.

*John McGahren,* with him *Warren, Knapp, O'Malley and Hill* and *E. A. Brennan,* for appellant.—It was error to permit the jury by their finding to prescribe a higher standard of care and precaution for the defendant in the conduct and management of its business than the one which it pursued, which was according to the usual customs and ordinary methods adopted and in general use by other coal companies: Titus v. Railroad Co., 136 Pa. 618; Lehigh & Wilkes-Barre Coal Co. v. Hayes, 128 Pa. 294; Northern Central Ry. Co. v. Husson, 101 Pa. 1; Iron-ship Bldg. Works v. Nuttall, 119 Pa. 149; Kehler v. Schwenk, 144 Pa. 348; Harvey v. Coal Co., 201 Pa. 63.

Defendant was not bound to give notice by signal or otherwise as its cars approached and passed over its private crossing to a person going inside of its private grounds: Schiffer v. Sauer Co., 238 Pa. 550; Larmore v. Crown Point Iron Co., 54 Am. Rep. 718 (101 N. Y. 391); Gramlich v. Wurst, 86 Pa. 74; Severy v. Nickerson, 120 Mass. 306; Holmes v. Railway Co., Law Re-

ports (Exchequer Cases, 4 Vol. 254); Vanderbeck v. Hendry, 34 N. J. Law Rep. 467; Walsh v. Fitchburg R. R. Co., 39 N. E. 1068; Gillis v. R. R. Co., 59 Pa. 129.

*James L. Lenahan,* with him *John S. Lopatto,* for appellee.

Per Curiam, May 22, 1914:

Under the facts in this case, which appear in the opinion of the court denying the motion of the defendant for judgment non obstante veredicto, the negligence of the defendant and the contributory negligence of the plaintiff were questions for the jury, and, as we have not been persuaded that any reversible error was committed in submitting those questions to them, the judgment is affirmed.